**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| FG SRC LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:20-CV-00315-ADA |
| | § | |
| INTEL CORPORATION, | § | Jury Trial Demanded |
| | § | |
| Defendant. | § | |

**INTEL CORPORATION'S RENEWED PARTIAL MOTION TO DISMISS
PLAINTIFF FG SRC LLC'S FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.  INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF FACTS ......................................................................................... 2

   A.  Background ......................................................................................................... 2

   B.  The FAC's legally deficient claim for willful infringement and enhanced damages. ........ 2

   C.  The FAC's legally deficient claim for induced infringement. ............................................ 4

III.  LEGAL STANDARDS ............................................................................................. 4

IV.  ARGUMENT .............................................................................................................. 5

   A.  The FAC fails to state a claim for willful infringement. .................................................... 5

      1.  FG SRC's allegations of pre-suit knowledge of the patent do not support a claim for pre-suit willful infringement. ....................................................................... 6

         a.  The alleged 2015 communications and presentation do not support pre-suit knowledge of infringement. ............................................................. 6

         b.  The alleged 2013 communications between SRC Computers and Altera do not support pre-suit knowledge of infringement. ........................................ 9

         c.  Intel's patent prosecution activities do not support pre-suit knowledge of infringement. ............................................................................................ 10

      2.  The prior IPR does not support FG SRC's claim for willful infringement. ............... 11

      3.  FG SRC cannot base its theory of willful infringement on constructive notice. ........ 11

      4.  FG SRC's filing of the complaint alone cannot support a post-suit claim for willful infringement. ............................................................................................ 12

   B.  FG SRC is not entitled to enhanced damages. ................................................................. 13

   C.  The FAC fails to state a claim for induced infringement. ................................................ 14

      1.  To the extent FG SRC alleges induced infringement prior to the filing of the lawsuit, its claim fails. ............................................................................................ 14

      2.  FG SRC's allegations of post-suit induced infringement fail to support any inference of specific intent to induce infringement. .................................................... 15

V.  CONCLUSION .......................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*,
No. W:13-cv-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) .........................................14

*Aguirre v. Powerchute Sports, LLC*,
No. SA-10-CV-0702 XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011) ............................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................4, 5

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ...............................................................................................8

*Commil USA, LLC v. Cisco Systems, Inc.*,
135 S. Ct. 1920 (2015)..................................................................................................1, 14

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
No. 6:14-CV-752-JRG-JDL, 2015 WL 12850550 (E.D. Tex. July 15, 2015)..................18, 19

*Covington v. City of Madisonville, Texas*,
No. 18-20723, 2020 WL 2516661 (5th Cir. May 15, 2020)....................................................8

*CyWee Grp. Ltd. v. HTC Corp.*,
312 F. Supp. 3d 974 (W.D. Wash. 2018)..............................................................................16

*Finjan, Inc. v. Cisco Sys. Inc.*,
No. 17-CV-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) .................................6, 9

*Flash-Control, LLC v. Intel Corp.*,
C.A. No 1:19-cv-1107, No. 35 (W.D. Tex. Oct. 31, 2019) .................................................13, 19

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011).......................................................................................................1, 14

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016)........................................................................................1, 5, 12, 13

*IP Power Holdings Ltd. v. Westfield Outdoor, Inc.*,
No. 219CV01878MMDNJK, 2020 WL 2992415 (D. Nev. June 4, 2020)............................7, 8

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
545 F.3d 1340 (Fed. Cir. 2008)...........................................................................................15

*Lifetime Indus., Inc. v. Trim–Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017).........................................................................14

*M & C Innovations, LLC v. Igloo Prod. Corp.*,
    No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018) ...........................................12

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
    No. 1-18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018)...............10, 11, 13, 15

*Memory Integrity, LLC v. Intel Corp*,
    144 F. Supp. 3d 1185 (D. Or. 2015) ....................................................16, 18, 19, 20

*Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*,
    No. 19-10485, 2020 WL 3964969 (E.D. Mich. July 13, 2020)................................5, 7, 10, 13

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014)........................................................................15, 17

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
    138 F.3d 1437 (Fed. Cir. 1998).........................................................................11

*Novartis Vaccines & Diagnostics, Inc. v. Regeneron Pharm., Inc.*,
    No. 18CV2434(DLC), 2018 WL 5282887 (S.D.N.Y. Oct. 24, 2018)....................................11

*Parity Networks, LLC, v. Cisco Sys., Inc.*,
    No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019).................5, 11, 13

*Proxyconn Inc. v. Microsoft Corp.*,
    2012 WL 1835680 (C.D. Cal. May 16, 2012) ...................................................17

*Puma SE v. Forever 21, Inc.*,
    No. CV17-2523 PSG Ex 2017 U.S. Dist. LEXIS 211140 (C.D. Cal. June 29,
    2017). ........................................................................................................11

*Uniloc USA, Inc. v. Logitech, Inc.*,
    No. 18-cv-1034, 2018 WL 6025597 (N.D. Cal. Nov. 17, 2018) ...........................................19

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009).........................................................................15

*VLSI Technology LLC v. Intel Corp.*,
    C.A. No. 6:19-cv-254, No. 52 (W.D. Tex. Aug. 6, 2019) .......................................13

**Statutes**

35 U.S.C. § 271(b) ...........................................................................................1, 14

35 U.S.C. § 284.................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 8................................................................................................................19, 20

Fed. R. Civ. P. 12(b)(6)..............................................................................................................4

Fed. R. Evid. 201 ......................................................................................................................10

## I.    INTRODUCTION

In response to Defendant Intel Corporation's motion to dismiss, Plaintiff FG SRC LLC filed its First Amended Complaint ("FAC") that, once again, asserts a claim for "enhanced damages" based on a count of willful infringement, and adds a count of induced infringement. Dkt. 18. But FG SRC does not allege sufficient facts to support these counts. For willfulness, the FAC fails to plead facts that would suggest Intel's conduct was "willful, wanton, malicious, [in] bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). Although FG SRC's amended pleading adds allegations of pre-suit knowledge of the asserted patent, it still fails to allege any facts to support that Intel had pre-suit ***knowledge of infringement*** of the asserted patent. Courts have repeatedly found that pre-suit knowledge of a patent alone is insufficient to support a willful infringement claim, and mere knowledge of infringement through the filing of a lawsuit is typical of any "garden variety" patent infringement case that does not meet the *Halo* standard. Thus, these allegations cannot support a willful infringement claim. Because FG SRC has already had the opportunity to amend its claims for willfulness and enhanced damages but has again failed to satisfy its burden at the pleadings stage, any further amendment would be futile. Thus, these claims should be dismissed without leave to amend.

The new count for induced infringement fails for similar reasons. "Induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement," *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011), which requires both "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Systems, Inc.*, 135 S. Ct. 1920, 1926 (2015). To the extent the FAC claims induced infringement ***prior*** to the filing of the lawsuit, FG SRC has not pled, and cannot plead, that Intel had ***knowledge of***

1

*alleged infringement* prior to the lawsuit. Thus, any claim for pre-suit induced infringement should be dismissed without leave to amend. As for the post-suit inducement claim, although FG SRC alleges that Intel instructs users to act in a way that FG SRC contends infringes, it fails to allege facts that support inferring that Intel *specifically intends* for its users to infringe. Accordingly, the FAC's *post-suit* induced infringement claim should also be dismissed.

## II.     STATEMENT OF FACTS

### A.     Background

On April 24, 2020, FG SRC sued Intel for infringement of U.S. Patent No. 7,149,867. Dkt. 1. Intel moved to dismiss FG SRC's count for willful infringement and request for enhanced damages, *see* Dkt. 11, and Intel did not oppose FG SRC's request for an extension of time to respond to that motion, *see* Dkt. 15. FG SRC responded by filing its FAC on July 9, 2020. Dkt. 18. Because FG SRC's amended pleading, much like its Original Complaint, is legally deficient, Intel files this Partial Motion to Dismiss the FAC.

### B.     The FAC's legally deficient claim for willful infringement and enhanced damages.

The FAC includes a count for willful infringement and a request for enhanced damages under 35 U.S.C. § 284. *See* Dkt. 18 at ¶¶ 115-122. For *scienter*, FG SRC relies on Intel's alleged actual and constructive notice of the '867 patent, incorporating by reference Section 5 of the FAC. *Id.* at ¶ 117. The FAC alleges constructive notice based on marking by SRC Computers, LLC,[1] *id.* at ¶¶ 69-72, but alleges no facts to support actual notice of infringement prior to the filing of the Original Complaint, *id.* at ¶ 73. Although the FAC alleges that Intel knew of the '867 patent before the lawsuit was filed, none of the allegations could establish the requisite knowledge of infringement, even if accepted as true. *See id.* at ¶¶ 74-81.

---

[1] FG SRC alleges that it is the successor to SRC Computers, LLC ("SRC Computers"). Dkt. 18, ¶ 2.

FG SRC alleges that "[b]etween July 2015 and September 2015, SRC Computers and Intel met and corresponded regarding a potential acquisition by Intel of SRC Computers and/or its intellectual property ('IP') including the '867 patent." *Id.* at ¶ 75. FG SRC further alleges that "[a] third party, 3LP Advisors, LLC ('3LP') provided Intel with a presentation entitled 'SRC IP Portfolio Overview,' on or around July 30, 2015," which referenced the '867 patent. *Id.* at ¶ 76-78. The presentation is not attached to the FAC. FG SRC does not allege that this presentation or these communications provided Intel with notice of infringement of the '867 patent.

FG SRC also alleges that "between February 2006 and August 2013, SRC Computers and Altera² met and/or corresponded on several occasions," and that "on several occasions, SRC Computers made Altera aware of its patent portfolio, which included the '867 patent." *Id.* at ¶ 79. FG SRC further alleges that on or around February 22, 2013, "counsel for SRC Computers sent a notice letter to Altera advising that … Altera's SoC FGPAs … **may possibly involve** SRC Computers' patented technology." *Id.* at ¶ 80 (emphasis added). The letter is not attached to the FAC, and FG SRC does not allege that the letter or other communications provided Altera with knowledge of the '867 patent (as opposed to general knowledge that SRC had a patent portfolio) or raised any allegations of infringement

FG SRC further alleges that Intel "also knew of the '867 patent as a result of its prosecution activities." Dkt. 18 at ¶ 81. FG SRC speculates that "these prosecution activities would have brought the '867 patent to Intel's attention." *Id*. But again, FG SRC does not allege that these prosecution activities provided Intel with knowledge of infringement of the '867 patent.

Finally, although FG SRC alleges that Intel continues to infringe "despite its knowing that the asserted claims of the '867 patent were held valid on May 10, 2019 by the Patent Trial and

---

² FG SRC alleges that Intel acquired Altera Corporation ("Altera") in December 2015. Dkt. 18, ¶ 17.

Appeal Board," *id.* at ¶ 118, FG SRC does not allege that Intel was involved in that proceeding or had pre-suit knowledge of it, and does not allege that the proceeding provided Intel with knowledge of any allegation of infringement. FG SRC otherwise offers only conclusory statements of willfulness. *See e.g., id.* at ¶ 117 ("Despite knowing of the '867 patent, Defendant continued and continues making, using, offering for sale, and selling the Accused Products resulting in infringement"); *see also id.* at ¶¶ 119-122, ¶ 94 (seeking enhanced damages based on willfulness).

### C.   The FAC's legally deficient claim for induced infringement.

The FAC includes a new count for indirect infringement based on inducement. *See* Dkt. 18 at ¶¶ 92-114. As explained above, the FAC alleges only ***post-suit*** knowledge of infringement. *Id.* at ¶¶ 95-96; *see also* Section II.B., *supra*.

The FAC alleges that Intel provides users with user guide instructions, Dkt. 18 at ¶¶ 97, 101-105, training and support services (including a web forum), *id.* at ¶¶ 98-99, 106-111, and an instructional YouTube video, *id.* at ¶ 100, and contends these materials constitute documentation, training, and support "on how to use [the Accused Products] in ways that infringe the '867 patent." *Id.* at ¶ 112. Similarly, FG SRC alleges that Intel induces infringement by providing development kits and the support services for those kits. *Id.* ¶ 113. As explained below, these alleged facts do not support a plausible inference that Intel specifically intended for its users to infringe, despite FG SRC's conclusory statement to the contrary. *See id.* at ¶¶ 113-114.

### III.   LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "The plausibility standard . . . asks for more than a

sheer possibility that a defendant has acted unlawfully," and the Court need not accept as true legal conclusions couched as factual allegations. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## IV.   ARGUMENT

### A.   The FAC fails to state a claim for willful infringement.

The FAC is devoid of factual allegations that support a claim for willful infringement. This Court has previously explained the standard to adequately plead a claim of willful infringement:

> To state a claim for willful infringement, a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent. Further, a plaintiff should plead willfulness with sufficient articulation of the relevant fact.

*Parity Networks, LLC, v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019) (internal quotation and citation omitted). Importantly, this standard requires the patentee to plead facts that support pre-suit knowledge of infringement, not just pre-suit knowledge of the asserted patent. *See id.* (finding patentee "adequately allege[d] that defendant had knowledge of infringement prior to the filing of the complaint"). This approach accords with Justice Breyer's concurring opinion in *Halo* and the many district courts that have required evidence of egregiousness to support a willful infringement claim. *See Halo*, 136 S. Ct at 1932 ("[T]he Court's references to 'willful misconduct' do not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent and nothing more.") (Breyer, J., concurring); *see also, e.g., Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, No. 19-10485, 2020 WL 3964969, at *5 (E.D. Mich. July 13, 2020) ("[N]umerous district courts have concluded that an allegation of willful infringement without evidence of egregiousness is futile.") (citing cases).

### 1. FG SRC's allegations of pre-suit knowledge of the patent do not support a claim for pre-suit willful infringement.

FG SRC alleges that Intel had pre-suit knowledge of the '867 patent. Dkt. 18 at ¶ 116 (citing § 5 and alleging that Intel had actual notice of the patent); *id.* at ¶ 117 (alleging that Intel knew or should have known of its alleged infringement "because of its knowledge of the '867 patent and its claims"). But FG SRC fails its burden to plead willful infringement because none of those allegations, even if taken as true, show pre-suit knowledge of infringement.

### a. The alleged 2015 communications and presentation do not support pre-suit knowledge of infringement.

FG SRC's allegations about communications in 2015 related to a potential acquisition and a presentation allegedly prepared by third-party 3LP Advisors, LLC ("3LP") are not sufficient to support pre-suit knowledge of infringement. Dkt. 18 at ¶¶ 75-78. ***First,*** FG SRC itself concedes that the communications were "regarding a potential ***acquisition*** by Intel of SRC Computers." Dkt. 18 at ¶ 75 (emphasis added). In particular, FG SRC does not allege that these communications put Intel on notice of infringement of any kind, let alone infringement of the '867 patent. A general knowledge of a plaintiff's patent portfolio and a history of business relationships between the parties is not sufficient to support pleading a claim for willful infringement. *See Finjan, Inc. v. Cisco Sys. Inc.,* No. 17-CV-00072-BLF, 2017 WL 2462423, at * 2, *5 (N.D. Cal. June 7, 2017).

***Second,*** the allegations related to 3LP's presentation likewise do not support pre-suit knowledge of infringement. FG SRC alleges that the presentation was "provided to Intel on or around July 30, 2015" and referenced the '867 patent eight times, but provides only an excerpt of the presentation and not the presentation itself. Dkt. 18 at ¶¶ 77-78. Importantly, FG SRC does ***not*** allege that any of the presentation's references to the '867 patent informed Intel that it was potentially ***infringing*** the patent. *Id.* Moreover, FG SRC does not identify to whom at Intel the presentation was sent, allege whether that presentation was in fact received and reviewed, or

specify the content of that presentation other than to allege its title, provide an excerpt out of

context, and contend that it references the '867 patent. As the court recognized in *Michigan Motor*,

naked assertions without factual enhancement about an unattached communication are not enough

to support a willful infringement claim:

> The plaintiff did not attach a copy of the referenced letter, never specified what the
> letter stated, did not mention who sent the letter, and did not mention to whom the
> letter actually was sent. ***There are too many dots to connect before the Court can
> arrive at finding that the letter*** indeed was sent to the defendants or their agents
> and that it ***informed the defendants that they were potentially infringing*** on
> MMT's patents.

*Mich. Motor Techs.,* 2020 WL 3964969, at \*5 (emphasis added). Here, too, there are no specific

factual allegations about the presentation to support a plausible inference that Intel knew or should

have known that it infringed the '867 patent.

> ***Finally,*** FG SRC selectively provides a small excerpt from 3LP's presentation that fails to

disclose Intel's subsequent communications at the conclusion of the parties' discussions. In a

September 23, 2015 email from Bradley Botsch, former in-house counsel at Intel, to David

Morland at 3LP Advisors, Intel declined the opportunity to acquire SRC Computers' patents and

made clear that it did ***not*** believe SRC Computers to have suggested that Intel infringed:

> We have carefully considered all the information you provided to us. However,
> after our review, we have determined these patents are not a fit with our portfolio
> needs. Intel respects the intellectual property rights of others. We do not believe
> SRC Computers is suggesting Intel infringes a patent, but please let us know if we
> are incorrect.

*See* Declaration of Brian Nash ("Nash Decl.") ¶ 2; Ex. A. Intel is not aware of any subsequent

response from 3LP or SRC Computers, and FG SRC does not allege the existence of such a

response.

> The court's conclusion in *IP Power Holdings Ltd. v. Westfield Outdoor, Inc.,* is instructive.

There, the plaintiff attached a single letter to the complaint, which suggested defendant had specific

notice of the asserted patent and allegations of infringement. *IP Power Holdings Ltd. v. Westfield Outdoor, Inc.,* No. 219CV01878MMDNJK, 2020 WL 2992415 (D. Nev. June 4, 2020). Defendant moved to dismiss the willfulness claim and attached additional letters that added context to the prelitigation correspondence between the parties. *Id.* at *2. The court held that the "proffered letters make it implausible that defendant is simply infringing despite notice of its infringement from plaintiff, as [plaintiff] implies," and accordingly dismissed the willful infringement claim. *Id.*

Here, as in *IP Power Holdings,* the full context demonstrates that there was no assertion of infringement in connection with the 2015 discussions. Moreover, it is appropriate for the Court to consider the full context of these communications because they are referenced in (albeit, like the presentation itself, not attached to) the complaint. In *IP Power Holdings*, the court considered other communications proffered by the defendant in its motion to dismiss under the "incorporation by reference doctrine," even though the plaintiff did not specifically allege the content of those documents in its complaint. *See IP Power Holdings,* 2020 WL 2992415, at *2 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). The Fifth Circuit has likewise held that "[w]hen a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, […] the court can also properly consider those documents." *Covington v. City of Madisonville, Texas*, No. 18-20723, 2020 WL 2516661, at *4 (5th Cir. May 15, 2020). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). The September 23, 2015 email, like the letters proffered in *IP Power Holdings*, are appropriately considered here because central to FG SRC's deficient claim of willful infringement is the absence of an allegation that Intel had

pre-suit knowledge of infringement of the '867 patent, which the proffered email demonstrates.[3] Accordingly, the 2015 communications do not support pre-suit knowledge of infringement.

> ### b.   The alleged 2013 communications between SRC Computers and Altera do not support pre-suit knowledge of infringement.

FG SRC next alleges that between February 2006 and August 2013, "SRC Computers made Altera aware of its patent portfolio, which included the '867 patent," and that on February 22, 2013, counsel for SRC Computers sent "a notice letter" to Altera. *See* Dkt. 18 at ¶¶ 79-80. Besides purporting to quote two sentences from the letter, FG SRC does not provide the letter's full contents in the FAC or attach it as an exhibit.

These allegations are not sufficient to support pre-suit knowledge of infringement. As noted previously, pleading a claim for willful infringement requires more than alleging a general knowledge of a plaintiff's patent portfolio . *See Finjan*, 2017 WL 2462423, at * 2, *5. And the letter, by its very terms, relates only to SRC Computers' apparent belief that "from the information presently available to us, these devices ***may possibly involve*** SRC Computers' patented technology." Dkt. 18 at ¶ 80 (emphasis added). There is no allegation that SRC Computers mentioned the '867 patent, let alone asserted that Altera infringed that specific patent. Moreover, FG SRC did not attach a copy of the letter, fully specify what the letter stated, mention who sent the letter, nor mention to whom the letter actually was sent.[4] Thus, there are simply no specific factual allegations about the letter or the discussions between SRC Computers and Altera that would support plausibly inferring that Intel knew or should have known that it infringed the '867

---

[3] Accordingly, Intel also attaches a copy of a 3LP presentation titled "SRC IP Portfolio Overview" to this motion.  *See* Nash Decl., ¶ 3; Ex. B. Intel believes that this is the same presentation referenced in the FAC.

[4] Accordingly, Intel also attaches a copy of a letter dated February 22, 2013 from counsel for SRC Computers to this motion.  *See* Nash Decl., ¶ 4; Ex. C.  Intel believes that this is the same letter referenced in the FAC.

patent. *See Mich. Motor Techs.,* 2020 WL 3964969, at *5 (finding "too many dots to connect before the court can arrive at finding that the letter . . . informed the defendant[] that they were potentially infringing.").

<strong>c.  Intel's patent prosecution activities do not support pre-suit knowledge of infringement.</strong>

FG SRC alleges Intel knew of the '867 patent because the published application that resulted in the '867 patent was cited during prosecution of an Intel patent application. *See* Dkt. 81 at ¶ 81. FG SRC alleges the publication was "expressly referenced" in an examiner's rejection, but neither the publication nor the rejection itself is provided in the FAC or attached as an exhibit.[5]

These allegations are insufficient to support pre-suit knowledge of infringement for at least three reasons. ***First***, by their very terms, the allegations relate only to an examiner's rejection of claims in an Intel patent application, not any assertion that an Intel product ***infringes*** the '867 patent. FG SRC itself acknowledges that the examiner's rejection referred to a published ***application***, not to the as-issued '867 patent or its claims. ***Second***, a review of the rejection itself reveals that the application was ***not*** used by the examiner as grounds for rejection. *See* Nash Decl., ¶¶ 5-6; Ex. D. Rather, the examiner merely pointed to that publication as evidence of what one skilled in the art would understand to be meant by "write through cache." *See id.* at 25 ("Further, in reference to the interview of May 2, 2012, the Examiner points out a ***definition provided by*** US 20040260884 and understood to those of ordinary skill in the art . . .") (emphasis added). ***Finally***, the Western District has held that alleging actual notice based on a defendant's patent prosecution

---

[5] The Intel application, U.S. Patent App. Pub. No. 2007/0143546, was published but has been abandoned. Intel has provided the Non-Final rejection referenced in the complaint, *see* Nash Decl., ¶¶ 5-6; Ex. D, but can provide the court with the entire history should the Court wish to take judicial notice of the material. *See Meetrix IP, LLC v. Cisco Sys., Inc.,* No. 1-18-CV-309-LY, 2018 WL 8261315, at *2 (W.D. Tex. Nov. 30, 2018) (taking judicial notice of Cisco's patents pursuant to Fed. R. Evid. 201 in evaluating claim of willfulness based on citation of plaintiff's patents-in-suit during the course of prosecution of patents by Cisco subsidiary).

10

activity is "too attenuated to plausibly infer that [defendant] had pre-suit knowledge" of an asserted patent. *Meetrix IP, LLC v. Cisco Sys., Inc.,* No. 1-18-CV-309-LY, 2018 WL 8261315, at *2 (W.D. Tex. Nov. 30, 2018). Thus, FG SRC's reliance on the purported citation of a related publication during prosecution of Intel's patent is insufficient to support FG SRC's count of willful infringement.

### 2. The prior IPR does not support FG SRC's claim for willful infringement.

FG SRC alleges that Intel's purported infringement continues "despite knowing" the result of IPR2019-00103. Dkt. 18 at ¶ 118. But FG SRC does not allege Intel had pre-suit knowledge of that proceeding, nor does it allege that the proceeding—which did not involve Intel—somehow provided Intel with knowledge of the '867 patent or of infringement of that patent. Mere awareness of a patent, of the patentee's existence in the marketplace, or of a prior patent proceeding involving third parties is not sufficient to support pleading a claim for willful infringement. *See Novartis Vaccines & Diagnostics, Inc. v. Regeneron Pharm., Inc.*, No. 18CV2434(DLC), 2018 WL 5282887, at *3 (S.D.N.Y. Oct. 24, 2018). Thus, that prior proceeding does not support FG SRC's claim against Intel for willful infringement.

### 3. FG SRC cannot base its theory of willful infringement on constructive notice.

FG SRC also alleges that Intel had constructive knowledge of the '867 patent. Dkt. 18 at ¶ 116; *see also id.* at ¶¶ 69, 94. Even if true, courts have consistently held that allegations of **constructive** notice, such as that provided by marking, are not sufficient to support a willfulness claim that requires actual knowledge of infringement. *See Parity Networks*, 2019 WL 3940952 at *3; *see also Nike, Inc. v. Wal-Mart Stores, Inc.,* 138 F.3d 1437, 1446 (Fed. Cir. 1998) ("[T]he issue of willfulness turns on the actual knowledge of the infringer, and is unrelated to the adequacy of constructive notice by the patentee."); *Puma SE v. Forever 21, Inc.,* No. CV17-2523 PSG Ex, 2017

WL 4771004, at *3 (C.D. Cal. Jun. 29, 2017) ("Actual knowledge—not constructive knowledge—is the criterion [for willful infringement].") (citation omitted). FG SRC's allegations of constructive notice are irrelevant, and do not satisfy its burden with respect to willful infringement.

### 4. FG SRC's filing of the complaint alone cannot support a post-suit claim for willful infringement.

FG SRC's allegations also do not meet the standard for supporting a post-suit claim for willful infringement. As outlined above, the FAC only alleges pre-suit knowledge of the ***patent;*** but even if true, those allegations do not support pre-suit knowledge of ***infringement*** of that patent. *See* Part IV.A.1, *supra*. FG SRC's remaining willfulness allegations simply repeat elements of a willfulness claim supported by mere conclusory statements. *See, e.g.,* Dkt. 18 at ¶¶ 117, 119-122. The FAC does not allege facts that would plausibly show that Intel's conduct was or is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs.*, 136 S. Ct. at 1932.

At best, the FAC alleges that Intel had knowledge of alleged infringement only by way of the Original Complaint. Dkt. 18 at ¶ 117; *see also id.* at ¶¶ 73, 95. That is the exact type of "garden variety" patent case that *Halo* deems insufficient for finding willfulness. *Halo Elecs.*, 136 S. Ct. at 1935; *see also M & C Innovations, LLC v. Igloo Prod. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018) ("Assuming for the sake of argument that the complaint put Igloo on notice of the existing patents, and Igloo continued manufacturing its infringing products, this would simply be the kind of 'garden-variety' patent case that *Halo* affirms is ill-suited for a finding of willfulness."). Otherwise, nearly every infringement action would constitute a willful infringement. *See M&C Innovations,* 2018 WL 4620713, at *5 ("Moreover, this post-suit fact pattern characterizes every infringement action except for those in which an alleged infringer immediately ceases production following service of the complaint."). This Court has previously

12

dismissed claims for enhanced damages where the complaint alleges nothing more than such a garden-variety patent case. *See Flash-Control, LLC v. Intel Corp.*, C.A. No 1:19-cv-1107, No. 35 (W.D. Tex. Oct. 31, 2019) (dismissing without prejudice allegations regarding post-suit willfulness and citing to its decision in *Parity Networks* as the standard for sufficient allegations); *VLSI Technology LLC v. Intel Corp.,* C.A. No. 6:19-cv-254, No. 52 (W.D. Tex. Aug. 6, 2019) (dismissing without prejudice an enhanced damages claim based on willful infringement); *Meetrix IP*, 2018 WL 8261315, at *3-4 (dismissing willful infringement claim and agreeing that "the complaint does not allege any facts raising a plausible inference of the egregious behavior required under *Halo*").

In sum, despite having full opportunity to amend its complaint, FG SRC still fails to allege facts that meet the standard to plead willful infringement. Thus, any further amendment is futile, and the Court should dismiss the willfulness claim without leave to amend.

**B.     FG SRC is not entitled to enhanced damages.**

Enhanced damages are not awarded as a matter of course, "but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo*, 136 S.Ct. at 1932. The FAC is devoid of allegations that could demonstrate such conduct. For example, it does not allege facts that support inferring that Intel deliberately copied a patented product, that Intel previously knew that its conduct was infringing, or that Intel otherwise behaved poorly or acted with bad faith. Accordingly, FG SRC's claim for enhanced damages should be dismissed. *See, e.g., Mich. Motor Techs.,* 2020 WL 3964969, at *5 (noting that "plaintiff pleaded only that the defendants were aware of the patents and nothing else, which, as noted earlier, is not enough to sustain a willful infringement claim for enhanced damages."). Moreover, since willfulness is inadequately pled despite the opportunity to amend, such dismissal should be with prejudice.

### C.      The FAC fails to state a claim for induced infringement.

To sufficiently plead a claim of induced infringement, FG SRC must allege facts showing that Intel "(1) had actual knowledge of the patent; (2) knowingly induced a third-party to infringe the patent; and (3) had specific intent to induce the patent infringement." *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, No. W:13-cv-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006)). The Supreme Court has made clear that "[i]nduced infringement under § 271(b) ***requires knowledge that the induced acts constitute patent infringement***." *Global-Tech Appliances,* 563 U.S. at 765-66 (emphasis added). As with allegations of willful infringement, claims for induced infringement require "knowledge of the patent in suit and knowledge of patent infringement." *Commil,* 135 S. Ct. at 1926; *see also Global-Tech*, 563 U.S. at 765-66. To survive a motion to dismiss a claim for induced infringement, a plaintiff "must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim–Lok, Inc.,* 869 F.3d 1372, 1379 (Fed. Cir. 2017) (alterations in original) (quoting *In re Bill of Lading Transmission and Processing Sys. Pat. Litig.,* 681 F.3d 1323, 1339 (Fed. Cir. 2012). FG SRC's induced infringement claim fails to meet this standard.

### 1.      To the extent FG SRC alleges induced infringement prior to the filing of the lawsuit, its claim fails.

To the extent FG SRC's claim for induced infringement relies on Intel's pre-suit conduct, the FAC fails to identify any facts showing Intel's pre-suit knowledge of any alleged infringement of the '867 patent. *See* Part IV.A.A.1, *supra*. Therefore, for the same reasons that the willfulness claim fails, so too does FG SRC's claim for pre-suit inducement.

14

Further, FG SRC's allegation of post-suit knowledge does not cure its failure to adequately plead any pre-suit knowledge of alleged infringement. As this Court has held, where the complaint "fails to sufficiently allege pre-suit knowledge," a plaintiff's reliance on the lawsuit to demonstrate post-suit knowledge will not save the "pre-suit portion of the indirect-infringement claims" from dismissal. *See Meetrix IP*, 2018 WL 8261315, at *3. Because FG SRC has now had ample opportunity to plead Intel's pre-suit knowledge of infringement but has not (and cannot) do so, dismissal of any pre-suit inducement claim by FG SRC should be without leave to amend.

### 2. FG SRC's allegations of post-suit induced infringement fail to support any inference of specific intent to induce infringement.

The FAC also fails to allege facts that would show the requisite specific intent sufficient to support a post-suit induced infringement claim. Specific intent to induce infringement "can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *see also Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) ("[T]he patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement. Absent the knowledge and affirmative act of encouragement, no party could be charged with inducement.").

FG SRC alleges Intel provides documentation, training, and support "on how to use [the Accused Products] in ways that infringe the '867 patent," *id.* at ¶ 112; *see also id.* at ¶¶ 97-111, 113, but those allegations, even if taken as true, do not support inferring that Intel ***specifically intends*** to cause direct infringement, which is required to show inducement. *See Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1354 (Fed. Cir. 2008) (holding that specific intent "requires more than just intent to cause the acts that produce direct infringement . . . the inducer must have an affirmative intent to cause direct infringement") (internal quotation marks omitted).

In this regard, *Memory Integrity, LLC v. Intel Corp.*, is instructive. 144 F. Supp. 3d 1185 (D. Or. 2015). There, the patent owner added "dozens of facts" to the amended complaint that provided "several examples of Intel's instructions and technical support." *Id.* at 1196. The court held that these were not sufficient to support specific intent to induce infringement because the instructions "[did] not so much 'teach an infringing use' as identify and describe allegedly infringing functionality." *Id.* That is, the instructions "[did] not teach how to use Intel's products ***to infringe*** Memory Integrity's patents, but simply describe how Intel's products work—and the products appear to work in a way that, according to Memory Integrity, infringes Memory Integrity's patents." *Id* (emphasis added).

Here, as in *Memory Integrity*, the FAC points to sources that describe how users can use Intel products, but none of these allegations support inferring that Intel specifically intends its customers to infringe the '867 patent. ***First***, the Embedded Peripherals IP User Guide that is said to "provide[] users with instructions on using the Accused Devices in an infringing manner," Dkt. 18 at ¶ 97, is a ***576-page*** user guide that covers myriad ***optional*** ways to use the Accused Products, of which the allegedly infringing use is merely one.[6] Because there is no allegation that Intel specifically calls out that allegedly infringing use as part of a "purposeful, culpable expression and conduct" over and above "ordinary acts incident to product distribution," *Memory Integrity*, 144 F. Supp. 3d at 1196 (citing cases), this User Guide does not support inferring specific intent. *See id.* (dismissing induced infringement claim where plaintiff did not "sufficiently allege that Intel's documents instruct Intel's customers on how to engage in infringing uses that the customers would not otherwise engage in by simply buying the products."); *CyWee Grp. Ltd. v. HTC Corp.*, 312 F. Supp. 3d 974, 979 (W.D. Wash. 2018) (dismissing induced infringement claim and noting that

---

[6] *See* www.intel.com/content/dam/www/programmable/us/en/pdfs/literature/ug/ug_embedded_ip.pdf.

where "defendant's actions do not ***recommend*** an infringing use, courts decline to infer specific intent.") (emphasis added); *Microsoft Corp.*, 755 F.3d at 905, n.3 (noting that there would be no case or controversy to hear a declaratory judgment action of no induced infringement where the "accused product was capable of multiple uses and there was no evidence or allegation that the manufacturer ***encouraged*** the use accused of infringement.") (emphasis added).

Further, the Embedded Peripherals IP User Guide was prepared and made available to Intel's customers well prior to FG SRC's allegations of infringement. FG SRC cannot combine that pre-suit instructional documentation with Intel's supposed post-suit knowledge of infringement to plead that Intel has the requisite specific intent to induce infringement. *Cf. Proxyconn Inc. v. Microsoft Corp.,* 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012) ("Plaintiff's argument requires this Court to bootstrap the knowledge Defendants ***now*** have based on Plaintiff's filing of the Complaint onto defendant's acts ***before*** Plaintiff filed its complaint. Yet, a defendant can not be held liable because it induced or contributed to another's acts ***before*** the defendant had knowledge, because to do so effectively holds a defendant liable for acts it did without knowledge.") (emphasis in original); *Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) ("To the extent Aguirre relies on knowledge of Aguirre's patent after the lawsuit was filed, such knowledge is insufficient to plead the requisite knowledge for indirect infringement."). Thus, the guide, which was made available well before FG SRC's complaint cited it for infringement and which lacks purposeful encouragement or direction to use the accused products in an infringing manner, does not support an inference of specific intent.

***Second***, FG SRC alleges that Intel provides training and support for "product optimization," as evidenced by the first of two advertising materials for the FPGA Partner Program

17

identified in the FAC, *see* Dkt. 18 at ¶ 98, but fails to identify how that alleged "product optimization" equates to instructions to infringe the '867 patent.[7] In *Memory Integrity*, where the text of product literature or advertising contained "no facial connection to the wording in the asserted patents," the court found that the amended complaint did not contain "factual allegations that Intel instructed its customers on assembling and using the accused products in an infringing manner or that Intel trained its employees to assist customers in performing a patented method." *Memory Integrity*, 144 F. Supp. 3d at 1197-1198. The same is true here.

  ***Third***, and similarly, FG SRC vaguely asserts "[o]n information and belief," that Intel "teaches users to optimize applications including optimizing usage of direct memory access, such as that shown by usage of the descriptors in SRC's claim charts," Dkt. 18 at ¶ 99, and cites a YouTube video as an example, *see* Dkt. 18 at ¶ 100. However, FG SRC does not allege that the video contains specific instructions to Intel's customers to use the accused products in a manner that infringes the claims of the '867 patent. Indeed, FG SRC does not link the content of that video to the asserted patent claims at all. Pleading induced infringement requires more; FG SRC must track that material to the asserted claims. Its failure to do so is fatal to its claim of induced infringement. *See Memory Integrity*, 144 F. Supp. 3d at 1195 (where plaintiff has not tied defendant's statements "in ways that track the asserted patents, courts generally do not infer specific intent"); *see also Core Wireless Licensing S.A.R.L. v. Apple Inc.,* No. 6:14-CV-752-JRG-JDL, 2015 WL 12850550, at *4 (E.D. Tex. July 15, 2015) ("In other words, generic allegations that an alleged infringer provides instructional materials along with the accused products, without

---

[7] The second of the two links provided simply lists the Current Partners of the Intel FPGA Partner Program.  *See* https://www.intel.com/content/www/us/en/partner/fpga-innovation-partners/overview.html.

more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim.").

**Fourth**, FG SRC alleges that Intel taught its customers "how to perform direct memory access using an implementation of a vision processing unit ('VPU')," and that the VPU example purportedly teaches certain aspects of claim 1 of the '867 patent. *See* Dkt. 18, ¶¶ 101-104. But there is no allegation that a *vision processing unit* is one of the *FPGAs* accused of infringement. *See* Dkt. 18 at ¶¶ 55, 56 ("Each of the Accused Products includes an FPGA."). Nor has FG SRC alleged that Intel teaches its customers to apply the VPU training to FPGAs in a manner that would infringe the '867 patent. Instead, it states—without support—that "those teachings apply to both the referenced Neural Computer Stick 2 [a VPU] and also to Intel's FPGA products." *See* Dkt. 18, ¶¶ 105. Because these conclusory allegations require the Court to make an implausible leap from Intel's instructions with respect to unaccused products to infer Intel's specific intent to induce infringement by the accused products, they do not support "a reasonable inference that Intel specifically intended its customers to infringe [FG SRC's] patents." *Memory Integrity* 144 F. Supp. 3d at 1196. *See also Core Wireless,* 2015 WL 12850550, at *4 ("[F]ailing to allege any facts identifying, even at a basic level, which functionalities of the accused products are at issue, or how the instructions direct customers to use those products in an infringing manner, falls short of satisfying Rule 8's notice requirement."); *Uniloc*, 2018 WL 6025597, at *2 (simply alleging that a defendant "intentionally instructs its customers to use the accused devices" is "a formulaic recitation of a cause of action's elements [that] will not do to meet Rule 8's pleading standards.") (internal quotation marks and citations omitted).

**Fifth**, FG SRC points to entries in Intel's Support Community Forum. *See* Dkt. 18 at ¶ 107-111. Notably absent is any allegation that *Intel* provided the "suggestions for implementation"

on these forum entries. *Id.* Rather, the forum posts reflect a discussion among anonymous third-party contributors, not Intel. *See* Nash Decl., ¶ 7; Ex. E. Thus, this too fails to show that Intel provided instructions to its customers with the specific intent to induce infringement. *See, e.g., Memory Integrity*, 144 F. Supp. 3d at 1198.

**Finally,** FG SRC's only other allegations of specific intent are mere conclusory restatements of the foregoing examples, and not allegations of fact, *see* Dkt. 18 at ¶ 112-114, and thus cannot support FG SRC's claim of inducement.

In sum, there are no alleged facts that support plausibly inferring the specific intent required for FG SRC's claim of induced infringement. Thus, in addition to dismissing any claim for pre-suit inducement, the Court should also dismiss the claim for post-suit induced infringement.

## V.    CONCLUSION

Based on the foregoing, Intel respectfully requests that the Court: (i) dismiss FG SRC's count of willful infringement without leave to amend; (ii) dismiss FG SRC's request for enhanced damages based on willful infringement without leave to amend; (iii) to the extent it was made, dismiss FG SRC's count for pre-suit indirect infringement without leave to amend; and (iv) dismiss FG SRC's count for post-suit indirect infringement.

Dated:  July 23, 2020                              Respectfully submitted,

                                                   By:  */s/ Brian C. Nash*
                                                        Brian C. Nash
                                                        TX Bar No. 24051103
                                                        brian.nash@pillsburylaw.com
                                                        PILLSBURY WINTHROP SHAW PITTMAN LLP
                                                        401 Congress Avenue, Suite 1700
                                                        Austin, TX  78701
                                                        Tel: 512-580-9629
                                                        Facsimile: 512-580-9601

                                                        Callie A. Bjurstrom (*pro hac vice*)
                                                        CA Bar No. 137816
                                                        callie.bjurstrom@pillsburylaw.com
                                                        PILLSBURY WINTHROP SHAW PITTMAN LLP
                                                        501 West Broadway, Suite 1100
                                                        San Diego, CA 92101-3575
                                                        Telephone: 619-234-5000
                                                        Facsimile:619-236-1995

                                                        Ranjini Acharya (*pro hac vice*)
                                                        CA Bar No. 290877
                                                        ranjini.acharya@pillsburylaw.com
                                                        Matthew W. Hindman (*pro hac vice* to be filed)
                                                        CA Bar No. 247707
                                                        matthew.hindman@pillsburylaw.com
                                                        PILLSBURY WINTHROP SHAW PITTMAN LLP
                                                        2550 Hanover Street
                                                        Palo Alto, CA 94304
                                                        Telephone (650) 233-4500
                                                        Facsimile: (650) 233-4545

                                                        ***Counsel for Defendant***
                                                        ***Intel Corporation***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on July 23, 2020.

_/s/ Brian C. Nash_____
Brian C. Nash